

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| PEOPLE OF GUAM,<br><br>vs.<br><br>**PATRICK JOAQUIN HERNANDEZ aka Joaquin aka PJ aka Pat,**<br><br>Defendant. | CRIMINAL CASE NO. CF0789-24<br><br>**DECISION AND ORDER** |

## INTRODUCTION

This matter is before the Honorable Vernon P. Perez on Defendant **PATRICK JOAQUIN HERNANDEZ aka Joaquin aka PJ aka Pat's** ("Defendant") Motion for a New Trial. Defendant is represented by Assistant Alternate Public Defender Brycen J. Breazeale and the People of Guam ("the Government") are represented by Chief Prosecutor Curtis C. Van de veld. In accordance with its ruling from the bench on June 16, 2026, the Court now issues the following Decision and Order DENYING Defendant's Motion for a New Trial.

## BACKGROUND

Jury Selection and Trial commenced in this matter on September 17, 2025. On September 25, 2025, Defendant was found guilty by a jury of his peers for the charges of Burglary (As a Second Degree Felony) and Assault (As a Misdemeanor).

On October 1, 2025, Defendant filed the instant Motion. The Government did not file a written opposition but orally opposed the Motion at the Motion Hearing. After hearing arguments on January 23, 2026, the Court requested Defendant file a Supplemental Brief

articulating the specific time stamps and quotations from closing arguments referenced in his oral arguments. The Court also gave the Government leave to file a written response to those specific statements.

On January 27, 2026, Defendant filed his Supplemental Factual Details Re Issue Concerning Prosecutorial Misconduct During Closing. The Government did not submit any responsive pleading. The Court subsequently placed the matter under advisement.

## DISCUSSION

"The court on motion of a defendant may grant a new trial to him if required in the interests of justice." 8 G.C.A. § 110.30.

> While this statutory language seems straightforward, the law regarding motions for new trial is somewhat paradoxical. On the one hand, a trial judge has significant discretion—broader than the discretion enjoyed on motions for acquittal—to grant such motions and may 'weigh the evidence and evaluate for itself the credibility of the witnesses' without being required to view the evidence in the light most favorable to the verdict. On the other hand, we have stressed that 'motions for a new trial based on the weight of the evidence are not favored' and that trial courts should only grant such motions 'sparingly and with caution, doing so only in those really 'exceptional cases.' In exercising this broad (yet rare) discretion, the trial court may only grant a new trial if it concludes that 'the evidence 'preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred.'

*People v. Messier*, 2014 Guam 34 ¶ 13 (internal citations omitted).

Defendant identifies four grounds for a new trial: (1) the exclusion of witness Duane Matsunanga ("Matsunanga"); (2) the exclusion of Matsunanga's out-of-court statement; (3) prosecutorial misconduct during closing arguments; and (4) the exclusion of mutual combat as a lesser-included offense. *See generally*, Mot., Oct. 1, 2025. Defendant argues that he "must be granted a new trial to ensure his Sixth Amendment and Organic Act rights to a fair trial, and his right to adequately present a defense, are sufficiently respected." *Id.* at 3.

### I. Witness Matsunanga

Defendant first argues that he must be granted a new trial because the Court allowed witness Matsunanga to make a blanket assertion of his Fifth Amendment rights. (Mot. at 5-7).

Defendant sets forth that Matsunanga "should have been compelled to take the witness stand and potentially assert his Fifth Amendment privilege when it became clear there was a danger for self-incrimination, and the Court should have made a specific inquiry as to whether the assertion was appropriate under all facts and circumstances." *Id.* at 5.

Although courts generally prohibit blanket assertions of the privilege and instead require a particularized inquiry into the basis for each refusal to answer, that principle is not without exception. *People v. Palacios,* 2023 Guam 5 ¶¶ 28-29. A blanket claim may be sustained where the Court, "based on its knowledge of the case and of the testimony expected from the witness, can conclude that the witness could legitimately refuse to answer essentially all relevant questions." *Id.* at ¶ 29 (citations omitted).

Here, the record demonstrates that Matsunanga faced an active and substantial risk of self-incrimination. At the time of trial, the Government expressly informed his appointed counsel[1] that it intended to prosecute him for his involvement in the same incident at issue. The Government reiterated this intention on the record on September 19, 2025, making clear that criminal charges would be forthcoming. *See* Digital Recording at 10:33:51, Sept. 19, 2025 ("I made it very clear to Mr. Morrison that it is my intention to prosecute Mr. Matsunanga."); Digital Recording at 10:34:20, Sept. 19, 2025 ("We do intend to prosecute him. We will be filing charges against him based upon whatever after this trial is over."). Those charges did in fact materialize less than one month later, when Matsunanga was charged in CF0736-25 with Burglary by Complicity (As a Second Degree Felony) and Assault (As a Misdemeanor), arising from the same conduct underlying the present case. *See* Indictment (CF0736-25), Oct. 17, 2025. That matter remains pending.

In light of the facts set forth in the Magistrate's Complaint in the instant matter[2] and the Government's representation that it believed Matsunanga personally participated in the burglary

---

[1] On September 18, 2025, the Court appointed the Public Defender Service Corporation to represent Mr. Matsunanga at trial.

[2] *See* Decl. of Emily L.A. Rees, Magistrate's Compl., Nov. 20, 2024 (referencing Matsunanga only as "Dwayne" and setting forth that he also punched and kicked the victim Gage Borja).

and assault, any substantive testimony Matsunanga might give concerning the events at issue would directly implicate him in conduct for which he faced criminal liability. Under these circumstances, virtually every relevant question, including seemingly innocuous details, carried a real and appreciable risk of self-incrimination for Matsunanga. "It is also generally recognized that neither party should be allowed to call witnesses it knows will invoke the Fifth Amendment in front of the jury and then be subject to inferences in a form not subject to cross examination." *Palacios,* 2023 Guam 5 ¶ 29 (citing *State v. Hughes,* 493 S.E.2d 821, 823-24 (S.C. 1997)).

Given the Government's stated intent to prosecute, the pending related criminal charges, and the likely scope of testimony, the Court continues to find that Matsunanga could legitimately refuse to answer essentially all relevant questions. Accordingly, Matsunanga's blanket invocation of the Fifth Amendment privilege against self-incrimination was appropriate, and the Court will not grant Defendant's motion for a new trial on this ground.

## II. Matsunanga's Statement

Defendant next argues he must be granted a new trial because the Court excluded Matsunanga's out-of-court statement to an APD investigator in error under Guam Rules of Evidence ("GRE") Rule 804(b)(3). (Mot. at 7-10). GRE Rule 804(b)(3) provides that a statement is admissible as an exception to the hearsay rule if, at the time it was made, it tended to subject the declarant to criminal liability such that a reasonable person would not have made it unless believing it to be true, and the declarant is unavailable as a witness.[3] Guam R. Evid. 804(b)(3). However, when a statement against penal interest is offered to exculpate the accused, the rule

---

[3] Rule 804(b) provides in relevant part:

The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
* * *
(3) A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

Guam R. Evid. 804(b)(3).

imposes an additional safeguard: the statement is not admissible "unless corroborating circumstances clearly indicate the trustworthiness of the statement." *Id.* Thus, the proponent bears the burden of demonstrating both that the declarant is unavailable and that the statement is reliable.

As an initial matter, the Court notes that the purported "statement" was not a written or signed statement by Matsunanga. Instead, it consisted solely of an APD investigator's interview notes summarizing what Matsunanga allegedly said. This creates a threshold reliability concern, as the notes represent not the declarant's own words, but the investigator's characterization of them, which may not be verbatim or complete.

Even assuming the content of the notes accurately reflected Matsunanga's statements, the Court must consider whether corroborating circumstances clearly indicate their reliability, especially because the statement was offered to exculpate Defendant. *See* Guam R. Evid. 804(b)(3). "[T]he showing of corroborating circumstances must do more than tend to indicate the trustworthiness of the statements; they must clearly indicate it." *United States v. Ospina*, 739 F.2d 448, 452 (9th Cir. 1984). One factor the Court considers is the relationship between the declarant and the accused. *See id.* ("Factors relevant to trustworthiness include the time of the declaration and the party to whom it was made, the existence of corroborating evidence, the extent to which the declaration is really against the declarant's interest, and the availability of the declarant as a witness."). Here, both Matsunanga and Defendant stood in an antagonistic posture toward the victim; both allegedly participated in the altercation, and both allegedly engaged in post-altercation property damage to the victim's vehicle. Given this shared alignment, Matsunanga had a clear motive to shift or mitigate responsibility in a manner favorable to both himself and Defendant. Such a motive weighs heavily against the reliability of the statement. Further, the timing of the statement, and the circumstances under which it was made, provide no independent indicator of reliability. The record does not reflect that the statement was made spontaneously, under oath, or in a context consistent with candor. Instead, it was taken during an investigative interview at the courthouse after Matsunanga was subpoenaed for trial by the Government – a time when Matsunanga had every incentive to minimize his own culpability.

Nothing in the surrounding circumstances suggests that he spoke under conditions that would "clearly indicate" trustworthiness, as required under Rule 804(b)(3).

In sum, even though Matsunanga was unavailable due to a valid assertion of the Fifth Amendment privilege, Defendant has not satisfied the separate requirement of demonstrating corroborating circumstances that clearly indicate the trustworthiness of the alleged statement. The combination of (1) the hearsay nature of the investigator's notes, (2) the mutual interest between the declarant and the accused, and (3) the absence of external indicia of reliability supports the Court's determination that Rule 804(b)(3) was not met. Therefore, the Court will not grant Defendant's motion on this ground.

### III. Prosecutorial Misconduct

Defendant next argues he should be granted a new trial because the "prosecutor engaged in misconduct during closing argument which was highly prejudicial and likely affected the jury's verdict." (Mot. at 10). Defendant contends that the prosecutor repeatedly emphasized that the Government's evidence was "undisputed," thereby impermissibly commenting on Defendant's decision not to testify. *Id.* at 10-11. Defendant identifies eight statements from the Government's closing argument. *See* Supp. Briefing, Jan. 27, 2026. Defendant argues the Government's statements unconstitutionally highlighted his failure to testify because only he alone could have contradicted the Government's version of events. (Mot. at 11).

The Fifth Amendment prohibits both direct and indirect commentary by the Government on a defendant's silence. *United States v. Cotnam,* 88 F.3d 487, 497 (7th Cir. 1996) (citing *Griffin v. California,* 380 U.S. 609, 615 (1965); *Freeman v. Lane,* 962 F.2d 1252, 1261 (7th Cir. 1992)). A prosecutor violates this rule when "1) it was the prosecutor's manifest intention to refer to the defendant's silence, or 2) the remark was of such a character that the jury would naturally and necessarily take it to be a comment on the defendant's silence." *People v. Cruz,* 2016 Guam 15 ¶ 19 (citing *Cotnam,* 88 F.3d at 497). Courts evaluate the challenged statements in context. *People v. Moses,* 2022 Guam 17 ¶ 40 (citing *United States v. Robinson,* 485 U.S. 25, 32-33 (1988)). "Additionally, a defendant's silence does not create a blanket protection from the

prosecutor attacking the defendant's theory of the case." *Id.* (citing *United States v. Hasting,* 461 U.S. 499, 515 (1983); *Cook v. Schriro,* 538 F.3d 1000, 1020 (9th Cir. 2008)).

Upon review of the eight statements, the Court notes that none directly refer to Defendant's silence or the absence of testimony from Defendant himself. Rather, the statements appear directed at the absence of contradictory evidence. The challenged statements did not direct the jury to draw a negative inference from Defendant's silence. Further, the jury was instructed prior to deliberation that "no inference of any kind may be drawn from the decision of a defendant not to testify" and that "the law never imposes upon a defendant in a criminal case the burden of calling any witnesses or producing any evidence." (Jury Instruction No. 3J). Accordingly, the Court will not grant Defendant's motion on this ground.

## IV.    Assault by Mutual Combat

Lastly, Defendant argues that he should be granted a new trial because the jury should have been "required to determine whether there was reasonable doubt as to the degree of the Assault Charge." (Mot. at 13). Defendant argues that the "jury should have been given a Verdict Form with a finding as to Assault by Mutual Combat and instructed on those elements" pursuant to 8 G.C.A. § 105.54. *Id.* at 14.

Section 105.54 provides that when a charged offense encompasses multiple degrees, the jury must either specify the degree or, if unable to agree, the verdict defaults to the lowest degree.[4] 8 G.C.A. § 105.54. This provision is intended to protect defendants from post-verdict increases

---

[4] Section 105.54 reads as follows:

> When a defendant is charged with a crime which is distinguishable by degrees, the jury shall, upon a finding of guilt, also find the degree of the crime of which the defendant is guilty. If the jury agrees upon the guilt of the defendant but cannot agree upon the degree, it shall render that verdict, and the defendant shall be deemed guilty of the lowest degree of the crime charged. If the jury agrees that the defendant is not guilty of the higher degree but cannot agree as to the lower, it shall render a verdict of not guilty of the higher degree and the defendant may again be tried only for the lower degree of the crime upon which the jury disagreed.

8 G.C.A. § 105.54. Section 105.54 "is based on § 1157 of the California Penal Code but, consistent with § 105.62, makes clear that the jury shall render a verdict as to charges on which it is certain." 8 G.C.A. § 105.54, Note.

in the degree of conviction. *See People v. Selivanov*, 210 Cal. Rptr. 3d 117, 145 (Cal. App. 2016). The degree requirement may be satisfied either "by a finding that specifically refers to the degree of the crime by its statutory numerical designation" or "by findings that encompass the statutory factual predicates of the degree of the crime." *People v. Jones*, 178 Cal. Rptr. 3d 636, 638 (Cal. App. 2014).

Here, Defendant was charged with Assault (As a Misdemeanor) under 9 GCA § 19.30(a). (Indictment, Nov. 25, 2024). The Court finds that assault under Guam law does not operate as a crime "distinguishable by degrees" within the meaning of § 105.54. Under 9 GCA § 19.30(a), a person is guilty of assault if he recklessly causes or attempts to cause bodily injury to another. Title 9 GCA § 19.30(d), which addresses "assault committed in a fight or scuffle entered into by mutual consent," does not create a separate "degree" of the same offense but rather defines a distinct offense, one premised on a unique factual predicate: mutual consent to fight.

Accordingly, there was no degree determination for the jury to make. The Indictment and jury instructions permitted a conviction only for misdemeanor assault.[5] Both parties agreed at

---

[5] 9 G.C.A. § 19.30 provides:

    (a) A person is guilty of assault if he:
        (1) either recklessly causes or attempts to cause bodily injury to another;
        (2) recklessly uses a deadly weapon in such a manner as to place another in danger of bodily injury; or
        (3) by physical menace intentionally puts or attempts to put another in fear of imminent bodily injury.
    (b) [No text]
        (1) An assault against a peace officer who is performing his official duties as a peace officer is a felony of the third degree if the perpetrator knew or should have known that the victim was a peace officer.
            (A) In any assault against a peace officer, the jury shall, with any finding of guilty, also return a finding as to whether the perpetrator had actual knowledge that the victim was a peace officer.
            (B) If the jury finds that the perpetrator had actual knowledge that the victim was a peace officer, the court shall impose a minimum sentence of one (1) year in prison without suspension, probation, parole, or work release.
        (2) For purposes of this § 19.30, "peace officer" means one so defined in § 5.55, Title 8, Guam Code Annotated, and to also include those individuals serving in a volunteer law enforcement capacity within any government of Guam law enforcement entity.
    (c) An assault committed by a peace officer on a person in his custody or control, without any provocation whatsoever and with the use of excessive force, is a felony of the third degree.

trial that assault by mutual combat is not a lesser included offense of misdemeanor assault under 8 G.C.A. § 105.58. Moreover, even if mutual combat were theoretically available, the evidence at trial foreclosed it. The victim testified that Defendant struck him while he was distracted, forcefully entered the vehicle, and initiated the attack without warning—conduct wholly inconsistent with a consensual fight. At no time did the victim agree to enter into a physical altercation with the Defendant. Therefore, because (1) Section 105.54 does not apply to the offense charged, (2) mutual combat is not a lesser included offense of misdemeanor assault, and (3) the evidence did not support a mutual combat instruction in any event, the Court will not grant Defendant's motion on this ground.

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendant's Motion for a new Trial. Sentencing remains set for September 8, 2026 at 3:00 p.m.

**IT IS SO ORDERED** this __1st__ day of July, 2026, *nunc pro tunc* to June 16, 2026.

_____
HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam

SERVICE VIA E-MAIL
I acknowledge that an electronic copy of the original was e-mailed to:
_AG, APD_

Date: 7/1/26  Time: 4:17pm

Antonio P Cruz
Deputy Clerk, Superior Court of Guam

(d) An assault committed in a fight or scuffle entered into by mutual consent is a petty misdemeanor.
(e) Any other assault is a misdemeanor.

*People v. Hernandez*
Case No. CF0789-24
Decision and Order